RECEIVED
MAY 31 2018
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| IRMA ROSAS Plaintiff vs. UNIVERSITY OF TEXAS AT SAN ANTONIO Defendant | ) ) ) ) ) ) CIVIL ACTION FILE NO.: **SA18CA0536 DAE** ) ) ) ) ) ) ) CIVIL COMPLAINT ) |

## CIVIL COMPLAINT

### Preliminary Statements

1. Plaintiff Irma Rosas ("Plaintiff") brings this action under the Civil Rights Act of 1964.

2. The Plaintiff alleges that Defendent University of Texas at San Antonio ("UTSA") discriminated against her due to her national origin.

3. The Plaintiff is a citizen of the United States and hails from Chicago, where she claims she learned to be direct with people. She is also the granddaughter of the late Narciso Rosas, a community activist in México, and the daughter of the late Cruz Rosas, his son and a citizen of the United States. The Plaintiff learned to distinguish between fact, fiction, and illusion from her parents.

4. The Plaintiff moved from Illinois to Texas in 2004. Shortly thereafter in 2006, she began her doctoral studies with Defendant UTSA in the Department of Bicultural and Bilingual Studies ("BBL").

5. The Plaintiff further alleges that she noticed the preferential treatment that other students received from professors in BBL.

6. The Plaintiff alleges that she experienced antagonism from professors with Defendant UTSA.

7. After her father died in April 2008, the Plaintiff alleges that she requested more financial assistance from Defendant UTSA for the 2008-2009 school year. When she did not receive it, she returned to work as a bilingual teacher with the Harlandale Independent School District. She worked there until December 2008.

8. The Plaintiff obtained more student loans.

9. The Plaintiff again requested more financial assistance from Defendant UTSA after Rita Urquijo-Ruiz, her partner, terminated their relationship in 2010. By then, she did not have health insurance either. When she again did not receive financial assistance, she had no choice but to apply to teach with a school district again.

10. The Plaintiff obtained more student loans.

11. The Plaintiff worked with the Austin Independent School District during the 2010-2011 school year.

12. After Austin Independent School District terminated her employment, the Plaintiff began publicizing her experiences on the Internet.

13. Sometime in spring 2012, the Plaintiff learned from Marie Miranda ("Miranda"), Ph.D. and Dissertation Chair, that she had not maintained Satisfactory Academic Progress for summer 2011, fall 2011, and spring 2012.

14. On June 29, 2012, the Plaintiff met with Marie Miranda ("Miranda"), Ph.D., Associate Professor, and Patricia Sánchez ("Sánchez"), Ph.D., Associate Professor and Graduate Advisor of Record. At the meeting Miranda and Sánchez discussed the process for completing a Satisfactory Academic Progress Appeal in order for the Plaintiff to continue receiving financial aid.

15. The Plaintiff alleges that at the same meeting, Miranda and Sánchez also told her to cease her online exposés against Austin Independent School District because it could compromise the relationship between the District and the University of Texas at Austin. The Plaintiff explained that she was practicing her Freedom of Expression.

16. Sometime towards the end of the fall semester 2012, Miranda informed the Plaintiff that she no longer qualified for financial aid and could not explain the reasoning behind it. The Plaintiff assumed that Defendant UTSA had retaliated against her for not ceasing her exposés.

17. The Plaintiff began looking for employment with desperation in order to support herself and her dog, and finish her dissertation.

18. On June 27, 2017, the Plaintiff first learned that Defendant UTSA terminated her financial aid because she was "enrolled less than part-time during the fall semester 2012".

19. The Plaintiff alleges that she enrolled for a class with one credit hour under the direction of Miranda and Sánchez.

20. The Plaintiff alleges that in her transactions to obtain records from Defendant UTSA, several employees sent her documents with sensitive information that had not been redacted prior to sending it via unsecured e-mail.

21. The Plaintiff's alleges that two fees on her account with Defendant UTSA have precluded her from obtaining official transcripts.

22. As such, the Plaintiff alleges that Defendant UTSA violated her civil rights.

## PARTIES

23. Plaintiff Irma Rosas resides in Chicago, Illinois.

24. Defendant University of Texas at San Antonio has an address of 1 UTSA Circle, San Antonio, Texas 78249.

## JURISDICTION AND VENUE

25. This Court has subject matter jurisdiction pursuant to the Civil Rights Act, Title 42 U.S.C. §§ 1983, 1985, and 1986.

26. Venue is proper under 28 U.S.C. §§ 1343 and 1367.

## FACTUAL ALLEGATIONS

27. In 2005, the Plaintiff applied to doctoral programs at the University of Texas at Austin and the University of Texas at San Antonio. She was accepted at both institutions.

4

28. In 2005, the Plaintiff held three advanced degrees. The first was a B.A. in Political Science and Spanish. The second was an M.A. in Hispanic Studies where the Plaintiff's area of study was Linguistics and her specialization was Applied Linguistics. The third degree was a M.Ed. in Instructional Leadership – Educational Studies where the Plaintiff's area of study was Elementary Education with a specialization in Bilingual Education (Spanish) and English as a Second Language ("ESL").

29. In 2005, the Plaintiff was a fully certified teacher in the State of Illinois and Texas. She had teaching experience in Bilingual, ESL, and dual language programs in elementary, middle school, and high school settings in both states. She also had experience teaching at the university level in Illinois.

30. The Plaintiff began her doctoral studies with Defendant UTSA in the fall 2006. The interdisciplinary nature of the Department of Bicultural and Bilingual Studies appealed to her for it centered on culture, linguistics, and teacher preparation. She was acquainted with some of the professors from events in the community too.

31. Defendant UTSA was and continues to be part of the University of Texas System ("system"). The system encompasses 14 educational institutions and six health institutions. To date, four of the institutions are designated Hispanic-serving Institutions and Defendant UTSA is one of them.

32. The Plaintiff alleges that Defendant UTSA discriminated against her because she was a U.S. citizen. Defendant UTSA provided the majority of the financial and academic support to international and immigrant students. The Plaintiff alleges that international and immigrant students from China, India, Brazil, Taiwan, South Korea, Cambodia, Indonesia, Latvia, Jordan, Peru, Colombia, and Mexico received preference

for work opportunities until they received their degrees or until they were hired at other institutions. The Plaintiff further alleges that many international and immigrant students did not demonstrate a command of oral and written English to write their dissertations and received preference for academic support from professors.

33. The Plaintiff resided in Chicago, Illinois—a city and state controlled by the Democratic Party—from her birth until 2004, when she reluctantly moved to the Republican-controlled State of Texas.

34. The Plaintiff alleges that Defendant UTSA discriminated against her because she identified as Chicana. A "Chicana" is usually a Mexican-descent woman born in the United States. It contrasts from a "Mexican American" identity only in that a Chicana/o is more prone to assert a politically-conscious way of life. One day, the Plaintiff alleges, Dr. Ellen Riojas-Clark, ("Riojas-Clark") a Professor in BBL said, "Chicana, what's that?" after the Plaintiff verbalized her identity in class and in front of her peers. The Plaintiff alleges that Riojas-Clark made the question using a disparaging tone. Immediately following, the Plaintiff further alleges, Riojas-Clark asserted, "Mexican American, you're Mexican American."

35. On another occasion, the Plaintiff alleges that she also said that she would be drawing on an Anzaldúan theoretical framework for her dissertation. The late Gloria E. Anzaldúa was a Chicana, lesbian cultural theorist. When the Plaintiff made the comment in class, the Plaintiff alleges that Riojas-Clark replied, "she's [Anzaldúa] not a theorist." The Plaintiff never took another class with Riojas-Clark.

36. Another example occurred in March of 2008 during the American Education Research Association ("AERA") Conference in New York, NY. The Plaintiff

6

and her then-advisor Dr. Lucila Ek ("Ek") were scheduled to co-present the Plaintiff's research and they met in Ek's hotel room to prepare the presentation. Once there, the Plaintiff alleges that Ek told her that society was structured by "power differentials" and that the Plaintiff had to be "submissive." Puzzled by what she was hearing, the Plaintiff asked Ek for clarification. The Plaintiff alleges that Ek repeated that the Plaintiff had to be "submissive." Offended, the Plaintiff removed Ek as her advisor.

37. The Plaintiff alleges that Defendant UTSA also provided the majority of the financial support to White/Anglo/Caucasian students until they received their degrees or until they were hired at other institutions. These students were neither bicultural nor bilingual and received preference for academic support by professors.

38. Josephine Méndez-Negrete, Ph.D. (Professor) and Miranda (Associate Professor) were two senior professors in the "Department of Mexican American Studies" at UTSA. Both professors identified as Chicanas. One day during their weekly meeting she asked Miranda, her dissertation chair, why the department was not called the "Department of Chicana/o Studies" instead. The Plaintiff further alleges that Miranda replied, "the University [UTSA] doesn't allow it."

39. The Plaintiff alleges that Defendant UTSA discriminated against her Spanish language identity. During the fall semester 2007, the Plaintiff took the course "Language and Identity" with Sonja Lanehart, Ph.D. ("Lanehart"), Professor and Brackenridge Endowed Chair in Literature and the Humanities in the Department of English. The Plaintiff learned that Lanehart had docked her final project because one of the components was in the Spanish language and untranslated. The Plaintiff alleges that Lanehart said "why did you [the Plaintiff] include something in Spanish and not translate

7

it into English when you know that I [Lanehart] don't understand it [Spanish]?" The Plaintiff further alleges that Lanehart's question and demeanor indicated that the Plaintiff had "offended" her. The Plaintiff explained that the Spanish language, *untranslated*, was part of her identity.

40. Lanehart was a monolingual English speaker who taught linguistics classes on African American English at UTSA, a Hispanic-serving Institution ("HSI"). The Plaintiff alleges that this disconnect was equally present in BBL, where all of the linguistics professors were neither Hispanic nor spoke Spanish.

41. Lanehart, Professor and Brackenridge Endowed Chair, organized the African American Women's Language Conference on March 7-8 in San Antonio, Texas. The Plaintiff attended the Conference. Out of the thousands of students at UTSA, the Plaintiff alleges that *one* student presented her work at the conference, an Afro-Latina of Cuban and Colombian heritage.

42. The Plaintiff worked for Lanehart as a Graduate Research Assistant during the summer semester 2009. The Plaintiff's assignment was to conduct online research of all children's full-feature animated films from the 1960s-present in order to isolate movies where Black people provided the voices for characters, and then digitize/copy and splice segments. The Plaintiff alleges that she later learned that the assignment was intended to directly benefit the work of Jennifer Bloomquist, Assistant Professor at Gettysburg College, an institution in the State of Pennsylvania.

43. The Plaintiff further alleges that no classes in BBL were taught in the Spanish language and no classes were created to teach Spanish as a heritage language. The Plaintiff alleges that she learned of students' abhorrence to taking Spanish classes in

8

the Department of Modern Languages and Literatures because professors there—most of who were foreign-born—would linguistically terrorize the Spanish that they learned at home and in their communities. The students were preservice bilingual teachers and students in the English department.

44. The Plaintiff taught a course in BBL for preservice bilingual teachers in the fall semester 2006. The Plaintiff alleges that many of her students were overwhelmed with the design of the program and considered becoming Generalists instead of Bilingual Generalists because of it.

45. In the summer 2017, the Plaintiff decided to reapply to law schools. Back in 1995, the Plaintiff took the LSAT but the low score she received killed her dream of going to law school.

46. The Plaintiff went online to order her academic transcripts from Defendant UTSA. The Plaintiff then learned that she had a "hold" on her account and was not able to order her transcripts. The Plaintiff was aware of the fee for the parking citation issued on September 12, 2012; however, she was not aware that there was a $135 fee on her account for the 2012-2013 parking permit. On June 23, 2017, the Plaintiff contacted Interim President Pedro Reyes to make her case against the holds on her account.

47. On June 27, 2017 at 10:05 am, Carol González ("González"), the Student Ombudsperson in the Office of the Vice President for Student Affairs at UTSA, contacted the Plaintiff via e-mail with a timeline of events leading to the fees.

48. On June 27, 2017 at 10:05 am, the Plaintiff alleges that she first learned that Defendant UTSA had terminated her federal student aid because the Plaintiff was "enrolled less than part-time" during the fall semester 2012.

49. The Plaintiff asked González for official documentation, e-mail communication or otherwise, for the timeline presented by González.

50. On June 27, 2017 at 4:32 pm, González sent the Plaintiff nineteen documents in a PDF file via e-mail.

51. González wrote, *"For graduate and doctoral students, a minimum of 4 semester credit hours of enrollment during the fall and spring semesters is required to be eligible for Stafford loan funding"* (emphasis in original).

52. Back in August 2012, the Plaintiff alleges that she sent an e-mail to Sánchez, to ask what class and number of hours she had to register for for the approximating fall semester 2012. The Plaintiff was not sure and she needed the information so that Margarita Gómez ("Gómez"), the Senior Administrative Associate in BBL, could give her the call number to register.

53. A couple of days later, the Plaintiff alleges that Sánchez replied (where she cc'd Miranda) and advised the Plaintiff to register for <u>one hour</u> for either BBL 7311 or BBL 7313. Sánchez explained that she did not know what course number the Plaintiff should register for but assured the Plaintiff that Gómez would know. The Plaintiff followed the Sánchez' advice and registered for one credit hour. This resulted in Defendant UTSA terminating the Plaintiff's financial aid and then dropping her from BBL 7313 weeks later on <u>September 26, 2012</u>.

54. The previous year on June 21, 2011, the Plaintiff alleges that Juliet Langman ("Langman"), Ph.D, Graduate Advisor of Record at that time, contacted the Plaintiff to inform her that she had to make an appointment with Page Smith ("Smith"), Ph.D, Associate Dean in the College of Education and Human Development. Smith

10

wanted to meet with all students who were approaching 99 semester credit hours of enrollment in doctoral programs to discuss their progress toward completion of their degree program. The Plaintiff was one such student.

55. The Plaintiff met with Smith on June 29, 2011. At such meeting, the Plaintiff alleges that she informed Smith that she was following Miranda's advise to continue taking classes and independent studies relevant to her research. The Plaintiff also alleges that she informed Smith that she felt it was unfair for him to be focusing solely on the number of hours she had and ignoring the fact that she was unemployed and with no access to healthcare. The Plaintiff further alleges that Smith replied that he had no control over that and that she had to speak with Langman in BBL about her situation.

56. Then sometime during the spring semester 2012, Miranda informed the Plaintiff that she had not maintained Satisfactory Academic Progress ("SAP") for the evaluation periods of summer semester 2011, fall semester 2011 and spring semester 2012. Defendant UTSA was ready to terminate the Plaintiff's financial aid and consequently her enrollment; however, Sánchez and Miranda assisted the Plaintiff in submitting the SAP appeal paperwork. On June 29, 2012, the appeal was accepted and the Plaintiff was placed on probation with a graduation plan.

57. On June 29, 2017 González stated "Once the email correspondence is sent, a record of the communication type is stored in Banner [software program] which was the screenshot information previously provided to you." The Plaintiff alleges that Defendant UTSA never notified her that she was not registered for four credit hours and that she was about to be dropped for non-payment because of it.

58.     That same day, González stated, "Campus Services utilizes a different computer system to track student citations and store related correspondence." According to Def. Abbott/UTSA's website, Campus Services includes UTSA Dining, Parking, the 'Runner (shuttle service), UTSA*Card*, the Rowdy Campus Store, and Vending. González provided the Plaintiff with copies of the three Parking Citation Notices that were sent to her e-mail which she received.

59.     González informed the Plaintiff that she was dropped from class on <u>September 26, 2012</u>. However the Plaintiff alleges that she and Miranda continued to schedule their weekly meetings over e-mail and meeting, both allegedly unaware that the Plaintiff was not registered for four credit hours and that she had been dropped for non-payment. The last documented meeting between the Plaintiff and Miranda occurred on October 18, 2012.

60.     Defendant UTSA had two campuses: the main campus was located at One UTSA Circle, 78249 and the downtown campus was located at 501 West Cesar E. Chavez Boulevard, 78207.

61.     The Plaintiff alleges that she informed Miranda that she needed office space at the Downtown Campus to complete her dissertation; the Plaintiff could not afford to travel from her home (78207) to the 1604 Campus (78249) on a daily basis. On October 29, 2012, Sánchez told her that it would be impossible to obtain shared office space for more than 4 hours a week since the Downtown Campus had limited office space. The Plaintiff further alleges that Sánchez was also unaware that the Plaintiff was not registered for four credit hours and that she had been dropped for non-payment.

62. On July 25, 2017, the Plaintiff received an unencrypted pdf file via e-mail from Alejandra Pérez ("Pérez"), Supervisor of Records Processing with the Office of the Registrar with Defendant UTSA. The Plaintiff alleges that no sensitive information such as the Plaintiff's social security number, birthdate, and student identification number was redacted. She further alleges that the documents that González sent to her did not have her student identification number redacted either.

63. In reviewing the file sent by Pérez, the Plaintiff first learned that the Dissertation Studies Committee in BBL met on October 17, 2013 and decided to deactivate the Plaintiff from their PhD program. The reason was because the Plaintiff had not been active "for 3 consecutive[-]long semesters."

64. As with Pérez, Aaron Faris—Senior Legal Coordinator with Legal Affairs with Defendant UTSA—responded to one of the Plaintiff's TPIA requests by sending her an unencrypted pdf file via e-mail with her social security number unredacted on August 28, 2017.

65. Interim President Pedro Reyes never replied to the Plaintiff's complaint sent to him via e-mail on June 23, 2017. The Plaintiff dealt with González (student ombudsperson). Prior to 2013, Defendant UTSA did not have a student ombudsperson.

66. In regards to the parking permit fee, on June 27, 2017, González wrote:

> Without the physical return of the permit, Campus Services does not have a way to ensure that the permit is not being used by the permit holder. In turn, the permit charge of $125.00 remains due.

The Plaintiff was never informed that she had to return the permit. She did not even know that she was not registered for four credit hours and that she had been dropped for non-payment because of it.

67. In regards to the parking permit fee, on June 27, 2017, González wrote:

> Mr. Clay Haverland, Assistant Vice President for Campus Services, has granted approval for you to submit a late appeal via email to Parking@utsa.edu to include all supporting appeal information.

68. The Plaintiff submitted the photos that Leonardo Amaro, Customer Service Assistant for Campus Services, sent to her on May 08, 2017.

69. The Plaintiff resubmitted the explanation for the appeal as follows:

> On September 12, 2012, I was cited for "blocking a driving lane" but if you look at the pictures (see Citation Picture_Rosas_1-4) there were no visual markings on the asphalt or sign on the fence that clearly marked that fact. Or was I to assume that the partial diagonal, white lines mark the "driving lane?" If so, then the lines had to extend to include the area where I supposedly [was] "block[ing] a driving lane." Moreover, the markings that seemed to be on the ground were blackened (see Citation Picture_Rosas_1). In the same picture, the blue car was parked in front of what seemed to have been a white line at some time. This is why I wanted to contest the citation.

70. On July 11, 2017, Burt Reynolds ("Reynolds"), Director of Campus Services, informed the Plaintiff of the appeal decision. The "Citation [was] upheld but [the] fine [was] reduced."

71. That same day and in the same e-mail, Reynolds explained the "second level appeal" as follows:

> If you disagree with the result of your first level appeal, you may make a Second Level Appeal to the Appeals Panel, comprised of faculty, staff, and students. The Appeals Panel may uphold the decision, reduce to a lesser violation, reduce to a warning, or void the citation. To appeal at this level, you must:
> 1. Pay the citation fine
> 2. Submit the Second Level Appeal to Campus Services via email: citationappeal@utsa.edu

At the time, the Plaintiff could not afford to pay the citation fine.

72. The Plaintiff <u>never</u> received a parking citation in the entire time she was enrolled with Defendant UTSA (August 2006-September 11, 2012).

73. Both issues precluded the Plaintiff from forwarding a copy of her transcripts to the Law School Admissions Council.

## CAUSES OF ACTION

74. The Defendant acted negligently, willfully, and knowing.

75. As a result of the Defendant's conduct, Plaintiff was injured as follows:

(1) precluded the Plaintiff from obtaining official copies of her transcripts, (2) opened the possibility of identity theft when it sent the Plaintiff's sensitive information via unsecured e-mail, (3) failed to provide the Plaintiff the financial and academic support, and health insurance, needed for her to focus on completing degree, (4) affected the Plaintiff's mental health by maintaining a hostile learning environment, (5) eliminated the only source of income the Plaintiff had by terminating her financial aid, (6) left the Plaintiff in financial ruin with $56,000 in student loans that to date continue to accrue interest and fees, and (7) played a role on the Plaintiff being evicted and left homeless.

76. Plaintiff also claims violations of rights that may be protected by the laws of Texas that may be supported by the allegations of this complaint.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests:

A. Damages to compensate for all bodily harm, emotional harm, pain and suffering, loss of income, loss of enjoyment of life, property damage and any other injuries inflicted by Defendant;

B. Punitive damages against the Defendant; and

C. Such injunctive, declaratory, or other relief as may be appropriate, including attorney's fees and reasonable expenses as authorized by 42 U.S.C. § 1988.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a jury trial on all issues raised in this complaint.

Plaintiff,
By *Pro Se*,

Dated: May 29, 2018

By: _____
Irma Rosas
Plaintiff
6333 S. Lavergne Ave.
Chicago, IL 60638
Telephone: (773) 627-8330
E-mail: irmarosaswebsite@gmail.com

17

Attachment 7 - Civil Cover Sheet & Instructions

JS 44 (Rev. 06/17)

CIVIL COVER SHEET

SA18CA0536 DAE

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| IRMA ROSAS | UNIVERSITY OF TEXAS AT SAN ANTONIO |
| (b) County of Residence of First Listed Plaintiff: Cook, Illinois *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant: Bexar, Texas *(IN U.S. PLAINTIFF CASES ONLY)* NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| (c) Attorneys *(Firm Name, Address, and Telephone Number)* Irma Rosas Pro Se | Attorneys *(If Known)* KENNETH PAXTON, Attorney General of Texas 300 WEST 15th STREET, AUSTIN, TEXAS 78701 |

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 196 Franchise | / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights / **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/Accommodations / ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | / ☐ 555 Prison Condition | | | |
| | / ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District (specify)  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Civil Rights Act 1964
Brief description of cause:
Violation of due to national origin

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.  DEMAND $  CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*: JUDGE _____ DOCKET NUMBER _____

DATE: May 29, 2018    SIGNATURE OF ATTORNEY OF RECORD: Irma Rosas Pro Se

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE DAE  MAG. JUDGE MJ-ESC

45

Rev. Ed. October 26, 2017